IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| KRISTEN RYKARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:10cv868-MHT |
| | ) | (WO) |
| CITY OF DOTHAN, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

In this lawsuit based on the Fourteenth Amendment, as

enforced through 42 U.S.C. § 1983, plaintiff Kristen

Rykard charges that, pursuant to a policy and practice of

deliberate indifference to the serious medical needs of

pretrial detainees, defendant City of Dothan, Alabama

denied her adequate medical care while she was a detainee

in the city's jail.[1]  The court's jurisdiction has been

_____

    1.  Rykard styles her claim under both the Eighth and
Fourteenth Amendments, but, as a pretrial detainee, her
"rights exist[ed] under the due process clause of the
Fourteenth Amendment rather than the Eighth Amendment."
Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir.
2009).   This is a distinction without a difference
                                      (continued...)

invoked pursuant to 28 U.S.C. § 1331.  This lawsuit is currently before the court on the city's motion for summary judgment in its favor.  For the reasons that follow, that motion will be granted.


## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the evidence offered, taken in the light most favorable to the nonmoving party, "could not lead a rational fact-finder to find for the nonmoving party," then summary judgment should be granted.  McDowell v. Brown, 392 F.3d 1283, 1288-89 (11th Cir. 2004).

_____

(...continued)
however, since the same standard applies in both instances.  Id.

## II.  BACKGROUND

Because, at summary judgment, all factual disputes are resolved favor of the nonmoving party, United of Omaha Life Ins. Co. v. Sun Life Ins. Co., 894 F.2d 1555, 1558 (11th Cir. 1990), the background provided is drawn directly from Rykard's affidavit; however, the court makes no findings as to the accuracy of that account.

On October 17, 2008, Rykard was arrested for public intoxication and taken to the Dothan city jail.  Other than a reported history of asthma and seizures, she was in good health at the time she was processed into the facility.  When she awoke in pain two days later, prison staff told her that she needed to fill out a sick-call-request form before she could receive treatment.  Although she filled out a form later that afternoon, she was not seen by medical personnel.

On October 20, Rykard again awoke with severe pain in her left hand.  This time, when she contacted jail personnel and requested treatment, she was taken by

3

ambulance to a local hospital.   Rykard informed her
treating physician that she was unaware of the cause of
her injury, but speculated that it might have resulted
from her attempts to get into and out of bed.   Her doctor
x-rayed the hand and took a culture of what appeared at
the time to be a bruise.   When the x-ray came back
negative, Rykard was diagnosed with a contusion, given
two prescriptions (antibiotic and anti-inflammatory),
fitted for a splint and sling, and discharged with
instructions to return if things worsened.

Immediately after returning to the jail, Rykard told
jail guard Receda Floyd that "the pain was still getting
worse and the swelling and discoloration had continued."
Rykard Aff. 3, attachment to Pl.'s Resp. (Doc. No. 28).
Rather than comply with the doctor's order and return
Rykard to the hospital, Floyd told her that she "did not
care"; noted that Rykard had already "been to the ER";
and reasoned that, since Rykard's "own family don't [sic]
care about [her]," the guards shouldn't either.   Id.

4

By 9:00 a.m., the swelling had worsened to the point where the splint's velcro fasteners would no longer attach and blisters covered Rykard's knuckles. She again informed the guards of her increased discomfort, but was told that she would simply have to deal with the pain. By the time Floyd delivered Rykard's lunchtime meal, some of the blisters on her skin had burst and new ones had formed. Rykard showed her hand to Floyd and again pleaded for medical attention, but Floyd simply told her that she "was not going to listen to this all day" and left. <u>Id</u>.

Rykard's condition continued to deteriorate and she began calling the guard station every 30 minutes to request medical attention. At 5:00 p.m., Floyd returned to Rykard's cell with a cream for her hand. The cream was not one of Rykard's prescribed medications, and it caused an immediate, severe burning sensation when

applied.    According   to   Rykard,   this   was   the   only
treatment that she received while in custody.[2]

Approximately an hour later, Floyd brought Rykard her
dinner.  By then, blisters had spread throughout Rykard's
fingers and she again pleaded with Floyd to do as the
doctor had ordered and return her to the emergency room.
Floyd refused, stating that the jail's policy did not
permit her to return so soon after being released.  That
evening, Rykard began to experience intestinal discomfort
accompanied by vomiting and severe diarrhea.  When the
night-shift guards came on duty, her repeated requests
for medical treatment were refused.

By the next morning of October 21, Rykard's hand was
covered in puss-filled blisters and the pain had reduced
her to tears.  She again begged for access to medical
care, but was denied.  At lunchtime, Floyd saw Rykard's

---

2.  While, at summary judgment, the court must
resolve all factual disputes in favor of the nonmoving
party, it is worth noting that jail records indicate that
Rykard was provided medication by jail staff at least
three times on October 20.

hand and commented that she wanted Rykard to keep her
distance.  Another guard approached and took Rykard to an
isolation cell.

Soon the other inmates began requesting that the
guards provide Rykard with medical care.  When those
requests were refused, the inmates called their families
and friends to report the situation.  Still, no
additional treatment was provided.

Finally, at approximately 6:00 p.m., there was
another shift change and a guard by the name of Charles
Parker heard Rykard's pleas.  Parker had her transported
back to the emergency room where she was diagnosed with
beta hemolytic streptococci and underwent surgery.
According to Rykard's affidavit, she "did not regain
consciousness for more than seven days" following the
surgery and had to have multiple follow-up procedures.
Id. at 5.  Despite months of physical therapy, Rykard
claims to be "permanently without independent use of
[her] left hand."  Id.

7

### III.   ANALYSIS

### A.

Rykard's cause of action comes from 42 U.S.C. § 1983, which provides, in part, that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured." Rykard asserts that she was deprived of her constitutional right to have her serious medical needs attended to while in state custody.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244-45 (1983) (establishing constitutional right to medical care for pretrial detainees).  To prevail on this claim, Rykard must demonstrate "both an objectively serious medical need and that [the City of Dothan] acted with deliberate

8

indifference to that need." <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1330 (11th Cir. 2008).

The City of Dothan is the only defendant in this case. While local government entities are considered "persons" within the scope of § 1983, local-government liability cannot be based on respondeat superior. <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978)). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>Id</u>. (citing <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989)).

This court's analysis begins with a determination of whether one of Rykard's constitutional rights was violated. To prevail on a denial of medical-care claim,

9

Rykard must demonstrate both that there was a "serious medical need" that, if left unattended, posed "a substantial risk of serious harm" and that "the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks and alterations omitted).  In other words, there must be deliberate indifference to a serious and substantial medical need.

## B.

A "serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)

(internal quotation marks and citation omitted).  Here, Rykard's treating physician looked at her hand and instructed her to return if her condition worsened.  Put another way, the physician found that Rykard's condition, were it to worsen, would be a serious medical need requiring immediate treatment.  Because Rykard's condition worsened, she had a "serious medical need." Id.  But, even without that diagnosis, the court would find that Rykard has put forth substantial evidence that she had a serious medical need, for a layperson would certainly recognize that a severely swollen and blistered hand, when accompanied by intense vomiting and diarrhea, warrants medical attention.

## C.

As to the second issue, Rykard can prove deliberate indifference either by producing evidence demonstrating that necessary medical treatment was delayed for non-medical reasons or by showing that public officials

"knowingly interfere[d] with a physician's prescribed course of treatment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2001). Young v. City of Augusta, Ga., 59 F.3d 1160 (11th Cir. 1995), provides an example. There, Pamela Young suffered from manic-depressive disorder. Id. at 1163. When she was incarcerated for two misdemeanor offenses, her father informed the court of her illness and requested that she be permitted to serve her sentence in a hospital setting. Id. at 1163-64. Despite that request, Young was confined to the city jail, where her psychological illness got the best of her and she needed repeated hospitalization. Id. at 1164. Young was severely mistreated by the guards, who withheld proper medication, treated her with medication that should have been withheld, and ultimately locked her in isolation under inhumane conditions. Id. at 164-65.

Young alleged that her constitutional rights were violated because "treatment for her mental condition was unduly delayed, ... she did not receive medication as

prescribed[,] and ... the events she endured in the
isolation cell fell below standards of human decency."
Id. at 1170.   The Eleventh Circuit Court of Appeals
agreed, explaining:

> "Although the record shows that Young
> received some treatment for mental
> illness at various times during her
> imprisonment and that medication was
> furnished on certain occasions, it does
> not demonstrate the absence of a factual
> dispute with respect to undue delay or
> that medication was dispensed by jail
> employees as prescribed. ... The jail
> medication charts pertain to only one
> day of Young's incarceration in
> September and an unidentified day or
> days in October. Moreover, it cannot be
> discerned from the charts whether the
> medicine dispensed on those days was
> given as directed, or, if there were
> other medications Young should have
> received. ... Furthermore, the City
> proffered no evidence to rebut Young's
> claims of inhumane treatment while in
> isolation.  Accordingly, if this action
> had been filed against the individual
> jailers responsible for Young's care,
> summary judgment plainly would not have
> been warranted."

Id. at 1171.  Young therefore stands for the proposition

that both lack of treatment and improper treatment may

give rise to a § 1983 claim.[3]

Here, as in Young, there is a material issue of

disputed fact as to whether Rykard was denied the

treatment prescribed by her doctor.  Rykard's affidavit

reveals that jail personnel were instructed that she

should be immediately returned to the emergency room if

her condition worsened, but that, when her hand swelled

and blisters appeared, spread, and burst, jail personnel

denied her emphatic requests to return to the hospital.

Despite clear doctor's orders that Rykard receive

immediate treatment if her symptoms worsened, jail

_____

3.  While the severe physical abuse inflicted on
Young by her jailers serves to distinguish this case
(Rykard did not suffer any physical abuse while in
isolation), the withholding of medical care served as an
independent and sufficient reason to deny summary
judgment for Young's jailers.  See Bauer v. Kramer, 424
F. App'x 917, 919 (11th Cir. 2011) (per curiam) (citing
Young for the proposition that a jailhouse nurse could
have been held liable on a deliberate indifference claim
had she "ignored the doctor's orders and ... not
administered the medication" as instructed).

14

personnel responded to Rykard's complaints by placing her in an isolation cell where, for approximately 30 hours, she went without meaningful treatment. There is no evidence that the jail delayed her treatment for medical purposes.

Moreover, as in <u>Young</u>, the care provided was contrary to that prescribed by Rykard's treating physician. While the doctor prescribed two medications and instructed her to return if her conditions worsened, jail staff treated her with an unknown and unprescribed salve that only exacerbated her pain and, when her condition deteriorated, jail staff placed her in an isolation cell and repeatedly denied her requests to return to the hospital. There is therefore substantial evidence that the jailors' actions constituted knowing interference with a prescribed course of treatment amounting to deliberate indifference.

15

D.

However, the above evidence is not enough for Rykard's claim to survive summary judgment in favor of the City of Dothan.  To hold the city liable for the actions of its employees, Rykard must also demonstrate that the city had a custom or practice that caused her injury.  This she has failed to do.

Rykard insists that it was Dothan's custom or practice to deny inmates repeat hospital visits unless they first waited an unspecified amount of time.  She offers two types of evidence to support that assertion.  First, she points to her own experience of being denied necessary medical treatment.  Second, she swears that jail personnel, in denying her requests to return to the hospital, justified their refusals by referring to a policy against repeated hospital visits.  Even assuming the validity of Rykard's assertions, the court is convinced that they fail as a matter of law to justify imposing liability on Dothan.

16

First, the treatment Rykard received fails to establish a practice of denying appropriate medical treatment. The rule in the Eleventh Circuit is that, with few exceptions, a "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality" participating in the unconstitutional conduct. Craig v. Floyd County, Ga., 643 F.3d 1306, 1311 (11th Cir. 2011). That rule is designed to ensure "'that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality'" and not for the improper actions of misguided employees who independently choose to violate a plaintiff's constitutional rights. McDowell, 392 F.3d at 1290 (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)).

17

For example, in Craig, Henry Craig raised a claim strikingly similar to the one Rykard has asserted in this case.  643 F.3d at 1306.  At the time Craig was processed into the county jail, he needed neurological surgery to address an injury he had received at the hands of his arresting officers.  Id. at 1308.  Nevertheless, he was held in jail for nine days before finally being taken to a local hospital for treatment.  Id. at 1309.  Craig brought suit against Floyd County alleging that it had a custom or practice of, among other things, "not referring detainees to physicians," and he supported that allegation with evidence that, during his own incarceration, he was treated by nine different employees, none of whom referred him to a doctor.  Id. at 1311-12.

The Eleventh Circuit rejected Craig's claim.  It concluded that he had "offered no proof of a policy or custom that was persistent or widespread" because, rather than showing "a series of constitutional violations," he

18

relied on "his own experience, which [wa]s, at most, proof of a single incident of unconstitutional activity." Id. at 1312 (internal quotation marks and alterations omitted). In other words, Craig's experience constituted only one example of unconstitutional conduct and was therefore insufficient to demonstrate a practice or custom of deliberate indifference, and this was true even though Craig had been denied appropriate care by multiple jail employees over the course of many days. Craig's teaching may be summarized as follows: "Although the complaint of [a] former detainee [may have] involved several employees of a municipality and an extended period of time, ... he ha[s still] failed to prove a policy or custom" but rather has proved "only ... his 'isolated incident.'" Id. at 1311 (citation omitted).

Craig requires the same result in this case. As in Craig, Rykard offers only her own experience and does not point to experiences of other inmate where the jail's refusal of return visits to the hospital contributed to

or exacerbated that inmate's medical condition.[4]   See McDowell, 392 F.3d at 1290.  Without any evidence that others have experienced similar treatment, Rykard alleges no more than an "isolated incident" insufficient to justify municipal liability.  Id.; see also Craig, 643 F.3d at 1312 (one inmate's experience is not alone sufficient to show a policy or practice).[5]

-------------------

    4.  It is unclear why Rykard has failed to produce such evidence.  Perhaps none exists.  However, it is certainly possible that, had plaintiff's counsel participated in discovery or deposed jail employees, evidence of similar instances of mistreatment might have surfaced.

    5.  In his concurrence in Craig, Judge Cox took issue with the majority's characterization of Craig's treatment as a "single incident."  643 F.3d at 1312.  Nevertheless, Judge Cox agreed with the majority that no pattern or practice had been established.  Here, while various Dothan jail employees may have mistreated Rykard to the extent that there were several separate constitutional violations rather than a single incident, there is no evidence that the individual mistreatments added up to a pattern or practice on the part of the city.  After all, Rykard was taken to the hospital twice during her five-day detention.

As to Rykard's other assertion that some jail personnel justified their refusal to return her to the hospital on an unwritten policy, the specific facts of this case render that allegation insufficient to demonstrate the existence of such a policy.

First, it is a basic tenant of municipal liability that "only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." Church v. City of Huntsville, 30 F.3d 1332, 1334 (11th Cir. 1994) (internal quotation marks and alterations omitted). Here, there is no evidence that the practice allegedly employed by the jail was dictated by municipal policymakers; no evidence of the city's failure to monitor or failure to train the individual guards who denied Rykard the appropriate treatment; and no evidence that anyone other than an individual jailor responsible for her care knew about-- let alone created--the so-called policy in question. Under these circumstances, there is no ground upon which

to justify municipal liability. A single non-supervisory and non-policy-making employee cannot by mere word or deed create municipal liability.

Second, Rykard does not clearly explain the nature of the alleged policy.  According to Rykard, she was told that the policy would "not allow another emergency room visit that quickly" after an initial visit, Rykard Aff. 3, attachment to Pl.'s Reply (Doc. No. 28), but how long one must wait between visits or whether there are exceptions to this rule is anyone's guess.  Certainly there would be no constitutional violation if the policy required jail personnel to implement the course of treatment suggested by the emergency room doctor and only return the patient for additional care if either conditions worsened or the suggested course of treatment proved ineffective; and that policy would be wholly consistent with the one Rykard alleges existed.  Since Rykard does not clearly allege a policy that would justify the imposition of municipal liability, the court

22

has no way of knowing whether she even alleged proper
grounds for relief.

Third, Rykard's affidavit is self-defeating.  While
she alleges a jail policy prohibiting return visits to
the hospital, her affidavit undermines that assertion.
In it, she explains that Parker "told [her] that [she]
should fill out a grievance upon [her] return to the
jail."  Rykard Aff. 4-5, attachment to Pl.'s Reply (Doc.
No. 28).  Accepting Rykard's affidavit as true, Parker
obviously saw his colleagues' refusal to provide Rykard
with treatment as abnormal and inappropriate, rather than
typical behavior in concert with some unwritten policy.[6]

------------------------

    6.  While it is inappropriate to make credibility
determinations at the summary-judgment stage, it is worth
pointing out that Rykard's complaint does not even
mention the alleged policy of limiting return trips to
the hospital.  It instead relies on the jail's alleged
policy of refusing to purchase prescription medication
for its detainees.  It is only in Rykard's affidavit,
submitted in response to Dothan's motion for summary
judgment, that  this new policy is alleged.  Of course,
that is the whole point of discovery: the parties are
able to hone their arguments based on new facts uncovered
through depositions and document production.  However, in
                                    (continued...)

Were it actually the policy of the jail to deny return visits to the hospital, then there would be no point to Rykard's grievance and no reason for the guard to suggest that she file one.

Finally, there is no evidence that any delay in obtaining medical care actually contributed to Rykard's injury. Rykard has failed to offer an affidavit from a medical professional indicating that promptly returning her to the doctor would have prevented some (or all) of her injuries. Indeed, Rykard has not even submitted medical records indicating that she suffered from the type of infection identified in her affidavit. While there is no reason for the court to doubt the veracity of Rykard's sworn statement, the lack of medical evidence of causation between the alleged policy and her injuries

_____

(...continued)
this case, Rykard took no depositions and there is no documentary evidence to support the policy's existence. A jury would certainly be free to conclude that Rykard simply made up the policy on which she now relies in order to survive summary judgment. While this court takes no position on the matter, it should go without saying that such behavior has no place in a court of law.

24

would independently justify granting summary judgment for Dothan.[7]

***

In order to maintain a claim for municipal liability under § 1983, Rykard must demonstrate that the City of Dothan had a policy or practice that contributed to the deprivation of her constitutional right. She has failed to come forward with sufficient evidence of any such policy.  The city is therefore entitled to summary judgment in its favor on Rykard's deliberate-indifference claim.

An appropriate judgment will be entered.

DONE, this the 28th day of December, 2011.

        /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

7.  To be sure, Rykard herself maintains that she has permanent injuries directly caused by the jail's failure to attend her medical needs.  However, she has not indicated how she has the medical expertise to say how her physical condition would have differed with and without the delay in medical attention she alleges.